UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No.   21-CR-10011-WGY |
| | ) |
| DOMENIQUE DEQUON HINES, | ) |
| Defendant. | ) |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPEAL OF ORDER OF DETENTION PURSUANT TO 18 U.S.C. § 3145(b)

I.   BACKGROUND

Defendant Domenique Dequon Hines ("Hines" or "defendant") appeals the order of detention issued by Magistrate Judge David H. Hennessy on January 6, 2021.   ECF Nos. 15, 17. The government opposes this appeal as the defendant is both a danger to the community, specifically, to Minor A and to other children, as well as a flight risk.   At the conclusion of the evidentiary detention hearing held in this case, the Magistrate Judge ordered the defendant detained both on dangerousness and risk of flight grounds.   This Court should not disturb the oral order of the Magistrate Judge.   For the reasons articulated at that hearing as well as the reasons outlined herein, the government opposes the defendant's release and asks that his Appeal be denied without a hearing.[1]

The government's position on detention is simple — the evidence introduced before Magistrate Judge Hennessy established that the release of the defendant, a repeat sexual offender, under any circumstances, presents a risk of danger to the community and to children as well as a flight risk.   As the Magistrate Judge found, the government established by clear and

---

[1]  Should the Court hold a hearing relative to defendant's appeal, the government reserves the right to file a supplemental opposition to defendant's appeal of the detention order after the conclusion of a hearing.

1

convincing evidence that there are no conditions or combination of conditions that can eliminate the risk of danger. Additionally, the Magistrate Judge found that the evidence introduced at the detention hearing established by a preponderance of the evidence that the defendant also poses a risk of flight. For the reasons outlined at the detention hearing as well as the evidence and information outlined herein, the defendant's Appeal should be denied and he should remain detained pending trial.

II.     PROCEDURAL BACKGROUND AND THE DETENTION/PRELIMINARY HEARING

On December 1, 2020, defendant was charged by criminal complaint with one count of Sexual Exploitation of Children in violation of 18 U.S.C. §§ 2251(a) and (e). ECF No. 1. On December 3, 2020, the defendant was arrested in the District of Illinois on this case. *See* ECF docket entries for December 3, 2020. An initial appearance was held in that district the following day on December 4, 2020, where the government moved for detention and the defendant consented to voluntary detention without prejudice reserving the right to address detention in the District of Massachusetts. On December 30, 2020, the defendant had his initial appearance in this district. ECF No. 10. At the initial appearance, the government moved for detention on the following grounds:

-18 U.S.C. § 3142(f)(1)(A):   a crime of violence for which a maximum term of imprisonment of 10 years or more is prescribed;
-18 U.S.C. § 3142(f)(1)(E): any felony that is not otherwise a crime of violence that involves a minor victim;[2] and
-18 U.S.C. § 3142(f)(2)(A):   serious risk of flight.

The Court scheduled a detention and preliminary hearing for January 6, 2021. On

---

[2] A rebuttable presumption that the defendant should be detained exists under 18 U.S.C. §§ 3142(f)(1)(A) and (f)(1)(E). *See* 18 U.S.C. §3142(e)(2).

2

January 5, 2021, defendant filed a motion for release from custody with proposed conditions for pretrial release. ECF No. 14 (which was also attached as an exhibit to defendant's Notice of Appeal at ECF No. 17). On January 6, 2020, an evidentiary detention and preliminary hearing was held, via zoom, before the Magistrate Judge. During the hearing, the government called one witness, FBI Special Agent Derek Back, and also introduced three exhibits.[3] ECF No. 16. The defendant did not object to the introduction of any of the exhibits.[4] The defendant did not submit any exhibits or call any witnesses at the hearing. At the detention hearing and in his motion for release, defendant sought and now seeks to return to the same residence he was residing at when he committed this serious child exploitation offense. At the conclusion of the detention hearing, defense counsel informed the Magistrate Judge that he was not contesting probable cause and conceded that the Government had sustained its burden on probable cause. *See* Exh. #4 at p.31.

The affidavit in support of the criminal complaint, entered as Exhibit #1, provides an overview of the defendant's criminal conduct in this case. In sum, the investigation revealed that the 23 year-old defendant and 14 year-old Minor A met on-line and the defendant asked for Minor A's telephone number. The two exchanged cell phone numbers and began communicating, primarily via iMessage, from on or about October 28, 2020, through on or about November 6, 2020. After exchanging profile pictures and confirming that Minor A was 14 years old, in short order, the defendant began requesting that the 9th grader take and send him

---

[3] The government attaches a copy of the three exhibits entered at the detention/probable cause hearing. Exhibit #1 consists of the criminal complaint and affidavit; Exhibit #2 consists of 7 pages of materials relating to the docket sheet for defendant's June 8, 2018 felony conviction for Child Pornography/Solicitation of a Child out of McHenry County, Illinois on docket # 17CF001310. Exhibit #3 consists of a copy of the four-page indictment for that Illinois case, dated January 11, 2018. All three exhibits are re-entered as Exhibits #1-3 herein.

[4] On January 25, 2021, the government obtained the transcript from the detention/preliminary hearing and a copy of the transcript is attached as Exhibit #4.

3

sexually explicit and nude photos and videos of herself at his cell phone number. Minor A complied. In some of the iMessage's, defendant commented on the photos Minor A sent to him at his request. In others, he described certain sexual poses he wanted Minor A to be in when she took those photos and also requested that she take and send him more of the same. She did so. In the iMessages, Defendant asked Minor A to refer to him as "Daddy" while he referred to Minor A as "kitten." One of those photographs is detailed in paragraph 10 of the criminal complaint. *See* Exhibit #1. Specifically, the defendant asks Minor A for a picture of Minor A's "kitten parts." In the iMessage, the defendant tells Minor A that he wants to look at the picture while he plays with himself. Minor A then sends the defendant a close-up photograph of a pubescent female's vagina with the legs spread apart, and the bottom portion of a sweatshirt, located above the vagina, is observed in the picture. The female's face is not visible in that picture.[5] Hines responds, "You have the prettiest kitten parts daddy has ever seen." *See* Exh. #1 at ¶¶ 2-13 (also at ECF No. #1-1). In other exchanges, defendant requested that Minor A send other images and videos of herself which she did. *Id.*

In November 2020, Minor A's parents became aware of the events involving their 14 year-old daughter and the 23 year-old defendant. The parents notified local police and provided them with a USB device containing messages they pulled from their iCloud account and also granted consent for authorities to examine Minor A's cell phone. Minor A saved the defendant's cell phone number ending in 3688 under the contact name "Daddy" on her iPhone. Further, during the relevant time outlined in the criminal complaint, Minor A resided in the Commonwealth of Massachusetts while defendant, a registered sex offender, resided in Illinois.

---

[5] During a forensic interview on November 23, 2020, Minor A confirmed that she took that photo of herself and sent it to the defendant at his request.

On November 6, 2020, the local police department notified the FBI of this investigation.

A forensic interview was conducted of Minor A on November 23, 2020, where, among other things, she identified the defendant by name, identified his phone number and how it is saved as "Daddy" in her phone contacts. Minor A also identified the defendant by photograph. *See* Exh. #1 at ¶ 14.

On January 4, 2021, U.S. Pretrial Services ("Pretrial") interviewed the defendant and thereafter generated a pretrial services report ("Report"). Prior to the commencement of the detention and preliminary hearing, the Magistrate Judge and the parties were provided with a copy of the Report. The information contained in the Report was referenced during the hearing.

The government outlines the defendant's criminal record in greater detail herein. In 2014, at the age of 17, the defendant was convicted of Failure to Notify Damage/Unattended Vehicle (Traffic) in Illinois. On July 21, 2014, he was sentenced to a 6 month term of court supervision in that case. However, on January 12, 2015, a petition to revoke his court supervision was submitted and on April 14, 2015, a warrant issued in that case. On May 26, 2015, the warrant was executed and the defendant was taken into custody. On June 2, 2015, his court supervision in that case terminated. *See* Report at p. 3.

Just over one year later, on July 7, 2016 the defendant was charged in Illinois with Driving on a Suspended License and released on bail. Between August 9, 2016, and January 23, 2017, on four separate occasions, a warrant issued for the defendant relative to that case. On January 30, 2017, he was convicted of that offense and sentenced to a 6 month term of court supervision. However, on August 1, 2017, a petition to revoke his court supervision was filed. On September 12, 2017, his court supervision terminated in that case. *Id.* at p. 4.

Approximately three months later, on December 19, 2017, at the age of 20, defendant was charged with several offenses including Child Pornography/Solicitation Child in the state of Illinois. On June 8, 2018, he was convicted of that offense and sentenced to a 4 year term of imprisonment in the Illinois Department of Corrections ("DOC").[6] On September 20, 2019, he was released on parole but his parole was violated at the door before leaving the facility due to not having a suitable residence. As a result he was re-admitted to the DOC for a parole violation. One year and one day later, on September 21, 2020, the defendant was discharged from parole.[7] *Id.* at p. 6. Thereafter, on October 28, 2020, which was only 37 days after he was discharged from parole on the unrelated prior conviction of Child Pornography/Solicitation Child, the defendant was communicating, via iMessage, with Minor A in the instant case. As evidenced by his criminal record, the defendant has a prior similar conviction involving a minor, multiple defaults on his record and has either violated his parole or his court supervision on more than one occasion. His history of noncompliance with court orders is evident.

Per the defendant and as outlined in the Report, the defendant was born and raised in Illinois and resides in Illinois with his mother and several younger brothers. The defendant has six siblings and three of his younger brothers are minors. Per the defendant, he has lived with his mother at that address since his release from prison. He seeks to be released to return to Illinois to live with his mother and three minor brothers.

Pretrial has concluded that the defendant poses a risk of danger based on the following factors: (1) the nature of the instant offense; (2) prior arrests and convictions; (3) history/charge

---

[6] Per the Pretrial Services report, the other charges were nolle prosequi on that same date.
[7] Per the Pretrial Services report, the defendant remains registered as a sexual predator in the Illinois State Police Sex Offender Registry. The registry indicates that the victim was 13 years of age and the defendant was 20 years old at the time of the offense.

involving sex offense/abuse; (4) safety concerns for the community or a specific individual; (5) criminal history; (6) history/charge involving a child; (7) history/charge involving use of computer/smart phone to facilitate alleged offense; and, (8) pattern of similar criminal activity history.  Pretrial further concluded that the defendant poses a risk of flight based on the following factors: (1) offense charged; (2) criminal history including record of failure to appear; and, (3) criminal history.  Probation indicated that the short time between being released on parole in September 2020 and initiating the alleged instant criminal conduct in October 2020, "poses an inherent danger to the community, and specifically children."  *See* Report at p. 8.  As such, Pretrial maintained that there was no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community and recommended detention. The government agrees.

At the conclusion of the evidentiary hearing held on January 6, 2021, the Magistrate Judge outlined the factors described in 18 U.S.C. § 3142(g) that the Court is required to consider: (1) nature and circumstances of the offense charged, including whether the offense involved a crime against a child; (2) the weight of the evidence; (3) the history and characteristics of the person, their physical and mental condition, family ties, employment, and the like; and, (4) whether, at the time of the current offense or arrest, the person is on probation, parole, or other release; and finally, the nature and seriousness of the danger to any person or the community. *See* Exh. #4 at p.41.  The Court then discussed those factors.  Because of the nature of the crime, the Court noted that this case "triggers a presumption that there is no condition or combination of conditions that will reasonably assure Mr. Hines appearance as required for the safety of any other person and the community.  That's a rebuttable presumption…" *Id.* at p. 41.

The Court went on to state that "weighing those factors, I find the Government has met its burden both on a danger and risk of flight." *Id.* at p. 41.

In addressing the grounds of dangerousness, the Court reasoned: ". . . I actually find that to be a more compelling case, and even though it requires a higher showing, that is, clear and convincing evidence, in terms of the nature and circumstances of the offense charged, including whether it involved a minor victim, this case involved precisely that, and Congress had expressly made a determination that a crime of this kind involving a minor victim is a factor that weighs in favor of detention.  As pointed out by the Government, and something I find very persuasive, the defendant thought to exploit the vulnerability of the child.  The young lady in this case, 14 years old, look, even if she's 15, is immature and easily misled, and the evidence presented showed that Mr. Hines sought to exploit this vulnerability and to do so for his own sexual gratification.  And as noted, this is not the first time that Mr. Hines has done this.  He's been previously convicted of soliciting a minor of child pornography in a case involving a 13 year old victim, and despite a period of incarceration at least, if I calculate it up, at least two years, none of that had the desired effect of rehabilitating this defendant or deterring him from engaging in the same conduct.  Rather, to the complete contrary, again as argued by the Government, within a matter of weeks of his release from the Illinois Department of Corrections, the defendant was at it again, and that is the situation that supports the current charge; that is, he was seeking to communicate with a minor for purposes of obtaining images of child pornography and in fact succeeded in doing so.  So the nature and circumstances of the offense support the defendant's detention and so does the weight of the evidence." *Id.* at pp. 41-42.

Regarding the weight of the evidence factor that must be considered, the Magistrate

Judge found "the evidence in this case is very strong.   The defendant's image, his communications with the minor victim are memorialized in a communication to her phone and in a USB drive of some kind that her parents provided to law enforcement when they initially reached out to law enforcement to advise them of what they understood to be going on.   So the evidence is – it's fairly compelling."   *Id.* at pp. 42-43.

Relative to the third factor, namely, the history and characteristics of the defendant, the Court agreed with defense counsel that "the defendant actually has many of the things that many defendants who appear before this Court don't have.   He has a supportive family.   He has family ties.   He has a job and some –at least some job history and ties to the greater Chicago area in Crystal Lake, Illinois."   In contrast, however, the Court also noted the following:   "[o]n the other hand, the defendant does have a criminal history, and significantly, it's the prior conviction for crimes involving almost the identical conduct with almost an identical profile of the victim, someone the defendant sought to exploit.   *Id.* at p. 43.

Regarding the fourth factor, the Court noted that at the time of this offense, the defendant was not on probation or parole as "he had been released and discharged by the Illinois Department of Corrections in late September 2020.   *Id.*   However, the Court indicated that "in terms of the nature and seriousness of the danger that would be posed, the defendant was on release for maybe five weeks before he reached out to the minor victim . . . I find that to be very telling.   It raises enormous concerns about the defendant, his willingness to comply with the law.   He's not on probation.   He's not on parole.   He's still required to comply with the law.   And as I indicated earlier, the fact that a two-year jail term out of the four-years that were imposed, at least that's how I understand it, for engaging in the same conduct did not have the

desired effect of deterring the defendant from engaging in the same conduct." *Id.* at pp. 43-44.

The Court expressed "a serious concern that there are conditions that will protect the community." *Id.* at p. 44. The Court acknowledged that in his motion for pretrial release, defense counsel itemized a number of pretrial conditions which the Court indicated ". . . go a long way, but they don't go far enough and they certainly don't go far enough in this case. That's not because of the conditions themselves. That's because of this defendant. I don't have any confidence that he would not exploit an opportunity to use a phone, a computer, whether it's at home, whether it's at work, whether it's somewhere in between, in a coffee shop where there's internet access. I mean, look, the Internet is everywhere, and policing someone's access to it is, despite Probation's commendable efforts, it's just impossible to do. And when we have a defendant who demonstrates by his conduct that jail sentences are not going to deter him, I have little confidence to believe that my setting a condition --- You're not to use a phone. You're not to use something that accesses the Internet – is not going to have an effect either." *Id.* at pp. 44-45. The Court went on to say "[a]nd so I absolutely find this to be a very strong case for detention on grounds of dangerousness. Again, I recognize it's a higher standard, but given these conditions, I find the Government has easily met that standard." *Id.*

Relative to danger, the Court also explained that "the defendant's mother reports that she lives with the defendant and his three younger siblings in a large apartment complex and children are not in the vicinity of the apartment." *Id.* at p. 46. The Court explained that may be true but the Court "found it a little bit difficult to believe that in a large apartment complex there are not children around; and ironically in the defendant's very apartment there are three children. I suspect things are perhaps a little bit different than the defendant's mother recalls, and I see that

as posing a danger as well for someone who has demonstrated proclivities of sexual attraction to children that this defendant has." *Id*. at p. 46.

The Court then addressed the risk of flight detention ground and found that the "defendant is by a preponderance of the evidence a risk of flight." *Id.* at p. 45. The Court acknowledged that this detention ground "is clearly a closer question because the defendant does have the community ties that I have referred to, job, support of his mother and family." However, the Court then went on to note the defendant's prior Child Pornography/Solicitation Child conviction and noted that should that conviction qualify as a predicate conviction, the defendant "faces up to 50 years in jail and a mandatory minimum of 25 years." The Court reasoned "[t]hat dovetails with the presumption in this case, that no condition or combination of conditions will reasonably assure the defendant's appearance. I also considered, as pointed out by the Government, that the defendant's compliance with conditions while on supervision is far from perfect." *Id.* at p. 45. The Court noted that four years ago when the defendant was 19 years old, after the defendant was released in connection with a driving with a suspended license charge, seven or eight warrants issued in that case. *Id.* The Court related that was not so long ago "when one considers the defendant spent a substantial amount of time between then and today in jail where complying with conditions of his lifestyle is not just an issue even when he had to. So, for these reasons, I have also serious concerns about whether any condition or combination of conditions will assure the defendant's appearance as required. Again, I recognize it's a closer call, but I believe the Government carried its burden and I so find." *Id.* at p. 45-46.

Magistrate Judge Hennessy found that the government had met its burden on both danger

and risk of flight grounds.   The court determined that the government had established by clear and convincing evidence that the defendant is a danger to the community.   The Court also found the government had shown by a preponderance of the evidence that the defendant poses a risk of flight such that no condition or combination of conditions can reasonably assure his appearance as required. The government urges this Honorable Court to likewise find the same.

On January 12, 2021, defendant filed an appeal of order of detention and requested an expedited *de novo* hearing.   ECF No. 17 at pp.1, 2.   On January 12, 2021, the defendant also filed a motion seeking funds in order to obtain a copy of the transcript of the detention hearing.   ECF No. 21.   Also on January 12, 2021, a grand jury returned a one-count indictment charging the defendant with the same crime as charged in the criminal complaint, sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e).   ECF No. 18.   On January 20, 2021, the defendant filed a motion asking the Magistrate Judge to reconsider his detention order.   ECF No. 24.   At the arraignment held via zoom on January 21, 2021, defense counsel withdrew, as moot, the motion for reconsideration.   ECF No. 25.

III.   <u>THE APPLICABLE LEGAL PRINCIPLES</u>

In *United States v. Tortora*, 922 F.2d 880, 883 n.4 (1st Cir. 1990), the First Circuit held that a district judge must conduct a "*de novo* review" of a contested detention order issued by a magistrate judge.   However, requiring the district court to conduct a *de novo* review does not mean that it must conduct a *de novo* hearing.   It also does not mean that the district court must disregard the magistrate's fact finding and the inferences to be drawn therefrom.   *Tortora* mandates that the district court must instead make an independent determination of the detention decision, unconstrained by the limits of the magistrate's conclusions or the record established in

the original detention hearing.

In *United States v. Koenia*, 912 F.2d 1190 (9th Cir. 1990), the court properly summarized the district court's power and obligation in reviewing a magistrate judge's detention order:

> [t]he district court ... (need not) start over in every case, and proceed as if the magistrate's decision and findings did not exist. The district court erred, however, in ruling that it could review the magistrate's findings under a "clearly erroneous" standard of deference. It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference. If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate. The point is that the district court is to make its own "de novo" determinations of facts, whether different from or an adoption of the findings of the magistrate."

*Id.* at 1193 and *see United States v. Delker* 757 F.2d 1390, 1394-1395 (3rd Cir. 1985).[8]

As the Magistrate Judge did, in determining whether suitable release conditions exists, the judicial officer must take into account the following:   (1) the nature and circumstances of the offense charged including whether the offense is a crime of violence, or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the accused, including family ties, physical and mental condition, employment and other factors; and (4) the nature and seriousness of the danger posed by the person's release.  *See* 18 U.S.C. § 3142(g).   Each of these factors must be weighed, and the decision on whether to release is an individualized one.   *United States v. Patriarca*, 948 F.2d, 789, 794 (1st Cir. 1991).

---

[8] Other cases cited by *Tortora* are to the same effect.  *See, e.g.*,   *United States v. Hurtado*, 779 F.2d 1467,1480(11th Cir. 1985) (district court must conduct an independent review); *United States v. Maull*, 773 F.2d 1479, 1481-2 (8th Cir. 1985) (district court to conduct de novo review of detention issue, and could hold hearing; court also empowered to accept stipulated facts in such a de novo proceeding); *United States v. Delker*, 757 F.2d 1390, 1393-94 & n. 3 (3d Cir. 1985) (district court required to make independent review of magistrate's detention order, although "[i]n most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate" and "may in an informed exercise of discretion, determine whether additional evidence is desirable" beyond what was presented to the magistrate).

IV. <u>ARGUMENT</u>

A. <u>The Danger to the Community</u>

In this case, for two of the three grounds that the government sought detention, namely, 18 U.S.C. § 3142(f)(1)(A) and 18 U.S.C. § 3142(f)(1)(E), a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the safety of any other person and the community. *See* 18 U.S.C. § 3142(e). The defendant has not rebutted this presumption of dangerousness. To the contrary, this 23 year old defendant, a repeat child sexual predator who was previously convicted of child pornography/solicitation of a 13 year old child for which he was sentenced to 4 years' incarceration in 2018, and whose parole ended in that case only 37 days prior to his first day of on-line communication, via iMessage's, with Minor A. He sexually exploited Minor A by employing, using persuading, inducing, enticing and coercing her into taking and sending him sexually explicit photos of herself. He has repeatedly exploited Minor A for his own sexual gratification, in blatant disregard of the welfare of Minor A and the law. He clearly presents a danger to Minor A, to other children, and to the community based on the nature and seriousness of the charges, and his criminal behavior victimizing children.

The evidence introduced at the detention hearing clearly demonstrates that over the time period outlined in the complaint affidavit, the defendant groomed and coerced Minor A to take and send him sexually explicit photos and nude videos of herself to him. He instructed her to delete the iMessages if her parents became suspicious of her. He asked for and received her physical address in Massachusetts, told her that he would bring her to a hotel, expressed his love for her, and informed her that they would live together. He discussed masturbation, discussed wanting to have sexual intercourse with her and explained how that would feel. He also forbade

14

her from communicating on-line with any other man.  As demonstrated in the complaint affidavit, the defendant exerted considerable manipulation over Minor A.  *See* ECF No. 16, Exh. #1 at ¶¶ 7-13.  His criminal behavior demonstrates that he poses a danger if released.

In this regard, it bears emphasizing that the definition of "danger to the community" under the Bail Reform Act extends beyond mere physical violence.  *United States v. Patriaca*, 948 F.2d 789, 792, n.2 (1st Cir. 1991); *United States v. Tortora*, 922 F.2d. 880, 884 (1st Cir. 1990).  "The Congress was apparently concerned with the safety not only 'of a particular identifiable individual, perhaps a victim or witness,' but also of the community as a whole." *United States v. Delker*, 757 F.2d 1390, 1393 (3rd Cir. 1985).

B.  Risk of Flight

Although no rebuttable presumption exists for the risk of flight detention ground, the government has also satisfied its burden of proof to warrant detention.  Sexual Exploitation of Children is a serious crime which carries significant penalties.  The defendant poses a risk of flight due to the lengthy mandatory minimum time he faces should he be convicted of this serious child exploitation offense.  At the detention hearing, SA Back testified about the defendant's prior conviction for child pornography/solicitation of a minor.  *See* Exh. #4 at p. 13. A copy of the indictment as well as the docket sheet for that prior conviction out of the state of Illinois were also introduced as exhibits during the hearing.  *See* ECF No. 16, Exhs. #2, 3.  Due to his prior conviction, the defendant faces a twenty-five year mandatory minimum sentence and maximum of 50 years if convicted of Sexual Exploitation of a Minor.  Should he not have a predicate sex offense conviction, the defendant would face a fifteen year mandatory minimum sentence and maximum of 30 years if convicted.  Additionally, his history of default warrants

and noncompliance with court supervision or parole further demonstrate the fact that he neither conforms to the law nor to the terms and conditions of his supervision while on release. Separate from the danger he poses; the defendant should be detained in this case based on his risk of flight.

    C.    <u>Releasing the defendant to the residence he shares with his mother and younger brothers, where he committed the instant offense, will not assure the safety of the community</u>

The defendant seeks to be released to return to the very same residence in Illinois where he is alleged to have committed the instant crimes. Defendant outlines his proposed release conditions in his motion for pretrial release. These suggested release conditions are insufficient. At the conclusion of the detention hearing, defense counsel argued that were the defendant to live at home, any danger he poses would be ameliorated by being placed on electronic monitoring and not having access to the internet. *See* Exh. #4 at pp. 34-36. The problem with this argument is three-fold. First, simply turning off the internet in a residence does not preclude someone inside from having access to the internet, particularly if one lives in an urban environment where there may be access to other WiFi providers and to phones or other devices that have access to the internet. Additionally, as defense counsel informed the Court at the detention hearing, Defendant has three younger brothers who are all engaged in remote school learning and have computers/ laptops which they utilize for school. *Id.* at p.39. Second, the record is bereft of information as to how the defendant would be supervised if he went back to the same place where he committed the charged crime. Third, the record demonstrates that the Defendant is capable of considerable manipulation over Minor A. For these reasons, as well as the other reasons outlined by the government and the Magistrate Judge at the detention hearing,

the defendant poses a danger that would not be mitigated by allowing him to live at home.

V. CONCLUSION

Each of the factors enumerated in 18 U.S.C. § 3142(g) weighs in favor of detention including, but not limited the nature and the circumstances of this extremely serious crime committed upon a child, the penalties are severe, and the weight of the evidence is strong against the defendant. Defendant poses a danger to Minor A, to other children and is also a flight risk. Based on the foregoing, the government requests that the Court deny the Defendant's Appeal of Order of Detention without a hearing and continue the order that the Defendant be detained pending trial.

Respectfully Submitted,

ANDREW E. LELLING
United States Attorney

By:  /s/ Suzanne Sullivan Jacobus
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and thereby served an electronic copy on counsel for the defendant.

By:  /s/ Suzanne Sullivan Jacobus
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

Dated: January 29, 2021