UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOMENIQUE DEQUON HINES,<br>Defendant | )<br>)<br>)<br>)<br>)  CRIMINAL NO. 21-10011-WGY<br>)<br>)<br>)<br>) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America submits this memorandum in support of its sentencing recommendation for defendant Domenique Hines ("Hines" or "defendant"). Taking into account Hines' sentencing guidelines range and the factors set forth in 18 U.S.C. § 3553, the Government recommends the Court sentence Hines to 240 months of incarceration followed by sixty months of supervised release.[1]

On September 13, 2022, Hines entered a plea of guilty to a Superseding Information charging Hines with a single count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). Dkt. No. 57. As described below, Hines is a recidivist who was first convicted for Child Pornography/Solicitation in the state of Illinois in 2018. In 2020, barely six weeks after being released from serving a four year sentence of incarceration for the Illinois state conviction involving child sexual exploitation, Hines began to correspond with the fourteen-year-old 9th grade freshman victim (hereinafter "Minor A") of the instant offense. Via Instagram and text messages, Hines coerced Minor A into sending him sexually explicit photographs and videos and responded

---

[1] The parties have entered into a plea agreement pursuant to Federal Rules of Criminal Procedure 11(c)(1)(C). In it, among other things, the parties agree to argue for a sentence of incarceration somewhere between 180-240 months followed by 60 months of supervised release. Dkt. No. 58.

by sending Minor A sexually explicit messages and photographs, all while demonstrating clear consciousness that his conduct was wrong and illegal. In addition, examination of a cell phone and SIM cards seized from Hines unearthed additional child pornographic images and evidence that he was engaged in coercive and sexualized communications with other underage females. Hines' criminal conduct directed towards Minor A was neither limited to one instance or one day. Rather, the then-23 year old defendant targeted this vulnerable young girl and coerced her into sending him sexually explicit videos. He intentionally preyed upon and victimized Minor A, coercing and enticing her to engage in sexually explicit conduct and send him images and videos of same. Hines is a calculating and manipulative child predator. The government submits that a sentence of 240 months is necessary, but not greater than required, to reflect the seriousness of Hines' predatory conduct and to deter both him and others who would victimize society's most vulnerable members.

## FACTUAL BACKGROUND

### *Hines Initially Meets Minor A via Instagram*

At the time of the offense, Hines was a 23-year-old man living in Illinois. Presentence Investigation Report ("PSR"), dated January 4, 2023, at ¶ 10. On or about October 28, 2020—only six weeks after his release from serving a sentence of incarceration in Illinois for Child Pornography/Solicitation—Hines met a 14-year old minor child ("Minor A") on Instagram. *Id.* Through Instagram, Hines solicited Minor A's phone number and, that same day, Hines and Minor A exchanged phone numbers and profile pictures. *Id.* From October 28, 2020 through November 6, 2020, Hines and Minor A corresponded continuously during the day and evening, including during times that Minor A was attending school remotely due to the Covid-19 pandemic. PSR ¶¶ 11-12.

### *Hines Knew Minor A's Age and That His Conduct was Illegal*

Minor A initially told Hines that she was fifteen or sixteen years old, but subsequently accurately confirmed that she was fourteen.  PSR ¶ 13**.**  Even while engaging in sexually explicit communications with Minor A and solicit pornographic material from her (discussed below further), Hines demonstrated that he knew and understood that his conduct was wrong and illegal.  Specifically, Hines sent messages to Minor A telling her that he wanted to marry her and that they would not have to hide their relationship after she turned sixteen "because that's the age of sexual consent in your state."  PSR ¶ 14.  Hines also instructed Minor A that, if her parents ever tried to take her cell phone, she should delete all their messages because "if they ever saw them I'd get in a lot of trouble."  PSR ¶ 18.  In addition, on November 7, 2020, the day after Hines' illegal conduct was discovered and Minor A ceased responding to Hines' messages, Hines deactivated the cellphone he used to communicate with her and acquired a new cellphone and phone number.  PSR ¶¶ 24-26.

### *Hines Engaged in Sexually Explicit Communications with Minor A and Solicited Pornographic Materials from Minor A*

From the outset of their online relationship, Hines engaged in sexually explicit communications with Minor A and, after confirming her age of 14, solicited sexually explicit images from her on multiple occasions.  On the first day of their online correspondence, Hines asked Minor A to call him "daddy."  On the second day of their correspondence, Hines asked Minor A "how come you never call me daddy?" and "Is it bad I've been thinking about what you look like doing the splits naked?"  PSR ¶ 13.  Prior to Hines requesting any sexual images from Minor A, Minor A confirmed her age of 14. *Id.*   Soon after, Hines asked for images of Minor A's private parts, telling her that he wanted to masturbate to them.  At Hines' request, on October 30, 2020, Minor A sent Hines an image of herself exhibiting her genitalia. PSR ¶ 15.

Hines responded by lewdly commenting on Minor A's genitalia and referring to himself as "daddy." *Id.* Hines also talked with Minor A about coming to Massachusetts and about sneaking Minor A out of her home. PSR ¶14. He talked about wanting to marry Minor A when she turned 16, then they would not have to hid their relationship because, per Hines, "…that's the age of sexual consent in your state." *Id.*

In subsequent communications, Hines solicited further explicit images of Minor A. At Hines' direction, Minor A provided Hines with full-frontal nude images and images of her buttocks, anus, and vagina. PSR ¶¶ 16-17. In total, at Hines' request, Minor A sent four nude images depicting her vagina, buttocks, anus, and chest to Hines. PSR ¶ 20. Minor A also sent two nude videos to Hines depicting herself undressing and showering. *Id.* On receiving these images and videos, Hines commented on them, requested more images and videos, directed Minor A on how to pose in photographs, and responded by sending an image of an erect male penis to Minor A. PSR ¶¶ 21.

In addition to soliciting images and videos, Hines engaged in sexually explicit conversations with Minor A. Hines discussed a desire to have sex with Minor A and asked how frequently Minor A masturbated and told her he wanted to watch her masturbate. PSR ¶ 22. Hines told Minor A he loved her. PSR ¶ 22. Hines also sought to control by Minor A by repeatedly demanding that Minor A "do exactly what you are told" and prohibiting her from talking to others online. *Id.*

***Additional Images and Videos of Child Pornographic Material Seized from Hines' Phone***

After Hines' arrest, a forensic examination of his cell phone and seized SIM cards revealed—not only child pornographic images of Minor A—but more than two dozen additional images of child pornography, including some depicting toddler-aged children. PSR ¶ 29.

Investigators also identified sexually suggestive or explicit communications with additional females aged between thirteen to sixteen years old. PSR ¶ 30.

*Hines' Prior Conviction*

In 2018, prior to the date of the offense in this case, Hines was convicted of a felony offense in Illinois of Child Pornography/Solicitation of a Child.  Hines was sentenced to four years of imprisonment and was released from incarceration on or about September 21, 2020— roughly six weeks prior to the instant offense.  PSR ¶ 31.

## THE STATUTORY MAXIMUM AND MINIMUM PENALTIES, THE PLEA AGREEMENT, THE SENTENCING GUIDELINES CALCULATION, AND THE AGREED-TO RANGE OF DISPOSITION

As referenced earlier herein, the United States and Hines entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in which Hines agreed to plead guilty to a Superseding Information charging him with coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b).  Dkt. No. 57.  Hines entered a plea of guilty to that offense on September 13, 2022.  Dkt. No. 59.  The statutory mandatory minimum penalty for Hines' offense of conviction is ten years' incarceration.  Hines faces a statutory maximum penalty of up to life in prison.  18 U.S.C. § 2422(b).

The Government agrees with the United States Probation Office ("USPO") that Hines' Guidelines Sentencing Range ("GSR") should be calculated as follows:

|  | **Offense Level** |
|---|---|
| Base offense level (USSG § 2G2.1) | 32 |
| - Offense involved Minor Between Age 12 and 16 (USSG § 2G2.1(b)(1)(B) | +2 |
| - Defendant has Accepted Responsibility for Defendant's Crime | - 3 |
| **Total Offense Level** | **31** |

5

The base offense level, enhancements and total offense level guideline calculations outlined above are consistent with both the PSR and the plea agreement. PSR ¶¶36-45 and ECF No. 58 at p. 2. The Government also agrees with the United States Probation Office that Hines' prior criminal offense places him in criminal history category II. PSR ¶ 52. Based upon a total offense level of 31 and a criminal history category of II, Hines' advisory GSR is 121 to 151 months. PSR ¶ 93.

In the plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties have agreed on the following disposition in this case: (a) recommendation of a sentence of incarceration between 180 and 240 months; (b) a fine unless the Court finds that Hines is not able, and not likely to become able, to pay a fine; (c) sixty months of supervised release; (d) a $100 mandatory special assessment; (e) a special assessment of $5,000, pursuant to 18 U.S.C. § 3014, unless the Court finds Hines is indigent; (f) restitution in a total amount to be determined at or following the date of sentencing; and, (g) forfeiture as set forth in the plea agreement. Dkt. No. 57, ¶ 5. The government also requests that Hines have no direct, indirect or third-party contact with Minor A.

### THE SENTENCING FACTORS UNDER TITLE 18, SECTION 3553(a)

*The Nature and Circumstances of the Offense and the Characteristics of the Defendant*

It would be difficult to overstate the severity of the defendant's offense. He is a repeat offender. In this case, he intentionally sought out an online sexual relationship with his underage victim, Minor A (as well as other minor females). Having lured her in, he sexually exploited Minor A—coercing her into creating and then sending child pornographic material on multiple occasions. He also sought to control her—by demanding that she obey his demands and by barring her from contact with others on line. In doing so, Hines victimized one of society's most

vulnerable members and did so over a period of weeks. Compounding Hines' culpability, Hines was well-aware that his conduct was wrong: He discussed the age of consent in his text messages to his victim, he instructed his victim to destroy evidence of his crime if it were detected, and, when his victim ceased contacting him, he discarded the cellphone he used to commit the crime and obtained a new phone number.

Hines' crime was heinous and he knew it. Such a crime merits a significant and severe sanction. The United States suggests its recommended sentence is fair, just, appropriate, warranted and consistent with the factors enumerated in 18 U.S.C. § 3553(a).

***The Need to Promote Respect for the Law, Provide Just Punishment and Afford Adequate Deterrence to Others***

Offenses involving child sexual exploitation are among the most heinous imaginable. Congress and the Sentencing Commission have recognized this in setting mandatory minimum sentences for these types of crimes and in developing lengthy sentencing guidelines ranges for these types of crimes. In Hines case, he faces a statutory mandatory minimum sentence of ten years and a GSR of 121 to 151 months. Even this, however, understates the severity of his offense. Hines was originally charged by indictment with sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a) and (e). If convicted of that offense—because of his prior child sexual exploitation conviction—Hines would have faced a mandatory minimum of *25 years* incarceration. Given this, the 240 month sentence requested by the government falls well within the range contemplated by Congress as providing "just punishment" and "adequate deterrence" for this particularly abhorrent type of crime.

The seriousness of this crime for which the defendant now stands convicted cannot be underscored or minimized. He has negatively affected the life of the minor teenage victim through his criminal acts. In examining the seriousness of the offense, the Court must review the

harm to the victim. *See United States v. Cunningham*, 680 F. Supp. 2d 844, 855 (N.D. Ohio 2010). Imposing serious penalties on those who exploit children serves the interests of those minor victims. Coercion and enticement of a minor is not a victimless crime. Minor A has been victimized because of the deviant desires of Hines.

In *United States v. Dyer*, the First Circuit reiterated that "child pornography victimizes children not only at the time of actual abuse but each time the image is accessed and distributed anew." 589 F.3d at 526-27 (1st Cir.2009). The impact Hines heinous actions have had on Minor A is great. In short, it has caused untold heartache upon she and her family. The continuing impact that Hines' crime has had on Minor A is reflected in the submitted victim impact statement of Minor A. *See* Exhibit #1 attached hereto. In it, Minor A's parents wrote, in part:

"…Our daughter, Minor A, like many others, had her life completely shut down in March of 2020 [i.e., due to the COVID-19 pandemic]….She found herself starting the 2020-2021 academic year from a desk in her room, hooked up to a monitor for countless hours, as her school started the year fully remote…
As school started, it became clear that she would not be returning to in-person school for a while, and her after school activities were drastically cut back or dropped completely…
This was the absolute worst time for her to encounter the defendant. Spending time on social media to pass the time, or just communicate with others, was a key part of life during the pandemic and was impossible to fully monitor and control. She was vulnerable to influence, was lonely from the forced isolation, felt like she had no control of her life, and was craving real connections with people.
The defendant knew this and preyed on her loneliness and need for friendship. The defendant was cunning and manipulative to our daughter and convinced her he was a friend for life and could be trusted. He coerced our daughter into doing things she was not old enough to consent to, and he was fully aware of her age as a minor. He also fully knew that her parents did not know about their online relationship and wanted to control her other relationships to isolate her to be more dependence upon him. He needed to be constantly aware of where she was and what she was doing and demanded that she stay in contact with him constantly….
She was betrayed by him and was depressed and untrusting of others for a long time after she found out his true nature and intent. Our daughter will forever regret and feel ashamed for what happened with the defendant even though she never did anything wrong but trust him. And as her parents, we have felt everything she felt and have suffered along with her.
In the two years since the crime took place, our daughter has matured and recovered from the shock and pain of the abuse she endured. She is a young, strong, beautiful teenage full of hopes and dreams. Unfortunately, the trauma of this nature will stay with her forever, and still to this day does not feel comfortable to testify in court or even face her abuser in person. The guilt,

shame, and embarrassment still run deep.  As her parents, we did not want to have her suffer additional trauma or regress into depression again, especially since she has made great progress on moving on with her life.

The defendant knew full well that his interactions with our daughter is a crime…Nor did he change his actions or engagement with our daughter once he did know her age (i.e., 14).  He continued to groom her and solicit photos of her.  This clearly shows a disregard for the rule of law, and even worse, the preying on our youth for his personal enjoyment and gain was acceptable to him.

…As you consider the defendant's sentencing, we ask that you take our daughter's suffering as well as her wishes into consideration.  She wishes to never see, hear, or be contacted from the defendant for the rest of her life…"

Congress has also demonstrated its asset to, and recognition of, the statement of victims. Congress has found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse *continuing harm by haunting those children in future years ...". Child* Pornography Prevention Act of 1996 ("CPPA"), Pub.L. 104-208, sec. 121, 110 Stat. 309-26, reprinted in 18 U.S.C. § 2251 note at 611.

### *The Need to Protect the Public from Future Harm*

When deciding on the appropriate sentence, the Court must also weigh the need to protect the public from future harm.  Consistent with 18 U.S.C. § 3553(a), the Court should consider the likelihood that defendant will commit similar offenses in the future, and account for that in the sentence ultimately imposed. *United States v. Burdulis*, 209 F. Supp. 3d 415, 423 (D. Mass. 2016). And "[a]lthough there can never be absolute certainty as to what a particular individual will do in the future, it is well-established that a sentencing judge can take into account whether he or she poses a high risk of recidivism." *Id.* (relying on *United States v. Politano*, 522 F.3d 69, 74–75 (1st Cir. 2008)). *See also Smith v. Doe*, 538 U.S. 84, 103 (2003) (relying on legislature's findings of high rates of recidivism among convicted sex offenders and their dangerousness as a class); *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("[C]hild

9

sex offenders have appalling rates of recidivism and their crimes are under-reported"); *United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders).

This warning is particularly apt with regard to Hines. He is already a recidivist offender who committed the instant offense only weeks after his release from incarceration on account of a prior child sexual exploitation offense. Moreover, he committed the offense fully cognizant of the illegality of his conduct. In light of the gravity and severity of the crime the defendant has been convicted of in this case, his manipulation and exploitation, and his complete lack of sympathy towards his victim throughout the entire time frame of the offense, as well as the § 3553(a) factors, a significant and lengthy period of incarceration is warranted. A sentence of 20 years will appropriately serve as both a general and specific deterrent to future conduct involving the coercion, enticement and exploitation of children, and will protect the public from further crimes of the defendant. The minor victim in this case is not an abstraction or an object- she is a real person who was sexually exploited by Hines. A significant term of imprisonment reinforces, to Hines and to others who are tempted to follow in his footsteps, that these crimes are exceedingly grave in nature. Such a sentence would also act as a deterrent, promote respect for the law, and serve to protect the safety of the public, and in particular, children, who are the most vulnerable victims in society. The best protection for the most vulnerable population in our society, namely, children, would be for the defendant to receive a very lengthy prison sentence, one that is being recommended by the government. The government's recommended sentence is an appropriate one, based not only on the facts and circumstances of the offense, but also the defendant's criminal background. Such a sentence is warranted to provide both adequate general deterrence and to specifically prevent Hines from committing similar offenses in the future.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court sentence Hines to a sentence of incarceration for 240 months' followed by five years of supervised release.[2] The government requests that Hines have no direct, indirect or third-party contact with Minor A. Such a sentence is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to others. Anything less would be insufficient to reflect the risk of future harm posed to society and the severity of the harm inflicted by Hines' crime.

                                              Respectfully submitted,

                                              UNITED STATES OF AMERICA,

                                              By its attorney,

                                              RACHAEL S. ROLLINS
                                              United States Attorney

                                              */s/ Suzanne Sullivan Jacobus*
                                              SUZANNE SULLIVAN JACOBUS
                                              CHRISTOPHER LOONEY
                                              Assistant United States Attorneys

Dated:  January 6, 2023

---

[2] As of the filing of this sentencing memorandum, the United States has not received any restitution requests from Minor A's family.  However, consistent with the plea agreement, the United States reserves the right to request restitution in a total amount determined at or following the date of sentencing.  Dkt. No. 58 at p. 3.  Restitution is mandatory pursuant to 18 U.S.C. § 3663A.  PSR ¶ 103.  Also, *see* 18 U.S.C. § 3664.

## CERTIFICATE OF SERVICE

      Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Suzanne Sullivan Jacobus*
Suzanne Sullivan Jacobus
Assistant United States Attorney

Dated: January 6, 2023